UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 JAN 31 PM 4:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

WYTERIA HUFFMAN,         }
                         }
    Plaintiff,           }
                         }
v.                       }
                         }   CASE NO. CV 00-B-1657-S
WILLIAM J. HENDERSON,    }
Postmaster General,      }
                         }
    Defendant.           }
                         }
                         }

ENTERED
FEB - 1 2001

## MEMORANDUM OPINION

This action is before the court on Defendant's Motion for Summary Judgment filed by William J. Henderson, Postmaster General ("defendant"). Plaintiff Wyteria Huffman ("plaintiff" or "Huffman") filed suit against defendant under 42 U.S.C. § 2000(e), *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C § 1981, and 42 U.S.C. § 1988, alleging discrimination based on race and gender. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

### I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff began working with the United States Postal Service on March 12, 1998, and, during the relevant time period, was a Grade PS-05, Step 0 Distribution Window Clerk at the Birmingham Processing and Distribution Center. (Defendant's Evidentiary Materials in Support of Motion for Summary Judgment ("DX"), Affidavit of Rafael A. Martorell ("Martorell Aff.") at ¶ 3 and Ex. A.) On February 1, 1999, the Postal Service issued a vacancy announcement for two

13

Grade PS-06 Accounting Technician positions at the Birmingham, Alabama Main Post Office. (Martorell Aff. at ¶ 4 and Ex. B.) Alisa Lassiter ("Lassiter"), a white female, was the selecting official for these two positions. (DX, Affidavit of Alisa Lassiter ("Lassiter Aff.") at ¶ 2; Martorell Aff. Ex. N. at 16-17, 67.)

Approximately thirty people applied for these positions, one of which was plaintiff. (Lassiter Aff. at ¶¶ 3, 5; Martorell Aff. at ¶ 5 and Ex. C.) A selection committee rated the individual applicants on (1) ability to maintain records and prepare reports; (2) ability to interpret instructions; (3) ability to perform basic arithmetic computations; (4) ability to use office machines; (5) a special requirement; and (6) an experience requirement. (PX 1.) Plaintiff scored a perfect score of thirty on all of these requirements. (*Id.*) Plaintiff's total points on the "Qualifications Rating Sheet for Best Qualified Positions" prepared by the committee was 207.10, higher than both white males who eventually received the positions.[1] (PX 1.) The selection committee gave Lassiter a list of the top eight applicants, which consisted of four black females, three white males, and one white female. (Martorell Aff. at ¶ 6 and Ex. D; Lassiter Aff. at ¶¶ 4, 5.) Plaintiff was included in the list of eight applicants given to Lassiter. (Lassiter Aff. at ¶ 5; Martorell Aff. at ¶ 7.)

Lassiter and Martha Harris ("Harris"), Lassiter's supervisor, then conducted interviews of the top applicants.[2] (Martorell Aff. Ex. N at 16-20, 65-68, 82-86; Lassiter Aff. at ¶ 6; DX, Affidavit of Martha Harris ("Harris Aff.") at ¶ 2.) Lassiter prepared a spread sheet that rated

---

[1] Leslie McConatha's score was 202.30, and Jerry Earnest's score was 203.80. (PX 1.)

[2] Although Lassiter made the final decision on her own, Harris assisted her during the interviews because Lassiter had not previously participated in the interview process. (Martorell Aff. Ex. N at 16-17, 65-68.)

2

each applicant on ten objective factors and scored them on fourteen interview questions. (PX 2, 3, 4; Lassiter Aff. at ¶ 7; Harris Aff. at ¶ 3; Martorell Aff. at ¶¶ 9-10 and Ex. N at 18-23.) The ten factors used to rate the applicants included: (1) education; (2) postal experience; (3) non-postal experience; (4) awards; (5) attendance; (6) computer skills using Word; (7) computer skills using Excel; (8) skills using calculator; (9) skills verifying data; and (10) score on an accounting test. (PX 2; Martorell Aff. Ex. E.) Each applicant was also rated on how they responded to the following fourteen questions:[3]

(2) What are some of the requirements and responsibilities of the new position?
(3) How relevant is your past experience to the duties and responsibilities of the new position?
(4) What is a PS Form 1412 used for?
(5) What is a PS Form 1908?
(6) What handbook is used in Accounting?
(7) What does AP stand for?
(8) How many AP's are in a Fiscal Year?
(9) What does AIC stand for?
(10) What does SFAS stand for?
(11) What does FLSA stand for?
(12) What are your career goals?
(13) What is an example of your people/peace making skills (working with others)?
(14) How would you handle a confrontational situation? What is the proper way to handle it?
(15) If another employee was given a discussion and was complaining to you, how would you handle it? What would you do?

(PX 3, PX 4.) Lassiter based the selection decision for the vacant positions solely on the scoring and ranking of the applicants during the interviews. (Harris Aff. at ¶ 3; Lassiter Aff. at ¶¶ 7-9; Martorell Aff. at ¶ 10.) The scores prepared by the committee were not used in this stage of the hiring process. (Martorell Aff. Ex. N at 23, 43, 68.)

---

[3] There were actually fifteen interview questions, but the first question was used to "get the employee comfortable" and, therefore, was not graded. (Martorell Aff. Ex. N at 22-23.)

Based on the scoring and ranking of the applicants, the top four candidates were Leslie McConatha ("McConatha"), a white male; Victoria Dixon ("Dixon"), a black female; Jerry Earnest ("Earnest"), a white male; and Pamela Smith ("Smith"), a black female. (Martorell Aff. at ¶ 11 and Ex. D, E; Lassiter Aff. at ¶ 8-10.) Plaintiff ranked in a tie for sixth. (Martorell Aff. at ¶ 11.)[4] Based on these rankings, McConatha and Dixon were offered the positions. (Lassiter Aff. at ¶ 9.) Dixon declined the position offered to her, so that position was then offered to Earnest. (Martorell Aff. at ¶¶ 8, 9 and Ex. F and G; Lassiter Aff. at ¶¶ 9, 10.) Earnest accepted the position. (Martorell Aff. at ¶ 9 and Ex. G; Lassiter Aff. at ¶ 10.) Defendant contends that plaintiff was not selected for either position because of her low ranking, which was based on her failure to answer two questions, her inadequate responses to other questions, and her limited postal experience in financial matters. (*See* Lassiter Aff. at ¶ 12; Martorell Aff., Ex. N at 24-25, 51, 76-78.)

On May 17, 1999, after learning that she had not been selected for either vacancy, plaintiff contacted an EEO counselor, alleging race and gender discrimination. (Martorell Aff. at ¶ 10 and Ex. H.) On June 14, 1999, the EEO counselor filed a report concluding that plaintiff's complaint could not be informally resolved. (Martorell Aff. at ¶ 11 and Ex. I.) On June 12, 1999, plaintiff filed a formal complaint of race and gender discrimination based on defendant's failure to select her for an accounting technician position. (Martorell Aff. at ¶ 12 and Ex. J.) The Postal Service completed an investigation and sent plaintiff a letter informing her of her

---

[4] After tallying the scores based on the objective criteria, McConatha scored twenty-two, Dixon scored twenty-four, Earnest scored nineteen, Smith scored twenty-six, and plaintiff scored twenty-two. (Martorell Aff. Ex. E.) After the scores based on the subjective questions were taken into account, McConatha scored sixty-three, Dixon scored fifty-seven, Earnest scored fifty-six, Smith scored fifty-four, and plaintiff scored fifty-one. (*Id.*)

appeal rights.[5] (Martorell Aff. at ¶ 14 and Ex. L.) Plaintiff requested a hearing before an EEOC administrative law judge. (*See* Martorell Aff. at ¶¶ 14-16 and Ex. L-N.) An administrative law judge held a hearing on April 6, 2000, and issued a decision on April 28, 2000, concluding that the Postal Service had not discriminated against plaintiff in failing to promote her to an accounting technician position. (Martorell Aff. at ¶¶ 16-17 and Ex. N, O.) The Postal Service issued a final agency decision on May 18, 2000, implementing the administrative law judge's decision. (Martorell Aff. at ¶ 18 and Ex. P.) Plaintiff then filed a complaint in this court alleging race and gender discrimination.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the

---

[5] The letter stated, in relevant part:

> **APPEAL RIGHTS:**
> You may request a hearing before an Administrative Judge of the Equal Employment Opportunity Commission (EEOC). . . . After the hearing, the Administrative Judge will submit his/her findings and conclusions to the Postal Service for the issuance of its final agency decision. EEOC regulations (29 CFR 1614.109(e)(3)) also permit the Administrative Judge to issue findings and conclusions without a hearing or make other such rulings as is appropriate.

(Martorell Aff. at Ex. L.)

evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

Plaintiff claims that defendant denied her a promotion to the Accounting Technician position on the basis of her race and gender in violation of Title VII and 42 U.S.C. § 1981. The relative burdens of proof in Title VII and § 1981 disparate treatment claims are the same. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir. 1991). In any action alleging disparate treatment by an employer, the plaintiff must prove that the employer acted with a discriminatory motive. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). To establish a prima facie case of discrimination, a plaintiff may employ direct evidence of discriminatory intent, statistical proof of a pattern of discrimination, or circumstantial evidence. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.

There is no direct evidence to support plaintiff's claims of discrimination. Thus, plaintiff must rely on circumstantial evidence to support her claims. Because plaintiff is relying on

6

circumstantial evidence to support her claims, the court is governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997) (clarifying the standard to be applied under Eleventh Circuit jurisprudence). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. "The facts necessarily will vary in Title VII cases, and the specification [] of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n. 13.

If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden to rebut the presumption created in such a situation is one of production rather than proof, requiring defendant to articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 257-58. In satisfying this burden:

> [t]he employer's burden of rebuttal is "exceedingly light." Since the rebuttal burden is one of production only, the employer "need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee]."

*Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir. 1989) (quoting *Burdine,* 450 U.S. at 254-55) (alterations in original).

If the defendant succeeds in carrying this burden, then any "presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity." *Combs,* 106 F.3d at 1528 (quotation

omitted). The plaintiff must then prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., discrimination or retaliation). *Id.* A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *See id.* at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To avoid summary judgment, plaintiff must submit sufficient nonconclusory evidence that defendant's articulated legitimate reasons for the employment decisions were pretextual. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471-72 (11th Cir. 1991); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989). Plaintiff must put forth concrete evidence that casts sufficient doubt on defendant's proffered reasons such that a reasonable fact finder would conclude that those reasons did not actually motivate the promotion decisions. *See Combs*, 106 F.3d at 1538; *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1083-84 (11th Cir. 1990).

### A.     Prima Facie Case

To establish a prima facie case of discriminatory failure to promote, plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected in spite of her qualifications; and (4) the individual who received the promotion is not a member of the protected class and had lesser or equal qualifications. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998). Plaintiff has established a prima facie case. She is a black female. (*See* Martorell Aff. at ¶¶ 6-7 and Ex. D, E.) It is undisputed that she was qualified for the promotion, she applied for the position, and she was rejected despite her qualifications. (*See* Martorell Aff. at ¶¶ 3-10 and Ex. C, D, E, F, G;

PX 1; PX 5.) Finally, the individuals receiving the positions, McConatha and Earnest, were both white males. (*See* Martorell Aff. at ¶¶ 7–9.)[6] Thus, plaintiff has established a prima facie case and the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the failure to promote plaintiff.

**B.      Legitimate Nondiscriminatory Reason**

Defendant has met his burden of articulating a legitimate, nondiscriminatory reason for not promoting plaintiff. Defendant contends that plaintiff was not selected for either position because of her low ranking in the interview process, which was based on her failure to answer two questions, her inadequate responses to other questions, and her limited postal experience in financial matters. (*See* Lassiter Aff. at ¶ 12; Martorell Aff., Ex. N at 24-25.) Lassiter testified:

> [Plaintiff] did not know the answers on at least two of the questions. Her postal experience was very small as far as financially related. It was less than six months. She did have an OIC assignment, which was good, but, . . . it was only three months. It wasn't a lot of experience. Some of the answers to some of the questions were not answered to the best that I think they could have been [answered]. And the interview process is the time that most people need to be at their best. They need to come across as [if] they know the right answers . . . . And the answers she gave were just not the best. Some of the other candidates had much better answers. [With] [t]he Excel, she seemed to be a little bit slow, slower than some of the others that were interviewed. [She] [d]id not follow instructions the best they could have been followed.

(Martorell Aff. Ex. N at 24-25.) Plaintiff argues that defendant's articulated reason is legally insufficient because it is entirely subjective. The court disagrees. First, Lassiter based her decision on both subjective and objective criteria. (Martorell Aff. Ex. N at 18-19, 68-72, 94;

---

[6] Defendant alleges that plaintiff failed to establish a prima facie case because one of the two positions at issue in this case was initially offered to Dixon, a black female. (*See* Defendant's Brief in Support of Motion for Summary Judgment ("Def.'s Br.") at 10.) The court disagrees since, upon Dixon's refusal, the position was offered to Earnest, who accepted it. However, the court notes that this fact undermines plaintiff's contention that the promotion decision was pretext for unlawful discrimination.

9

Lassiter Aff. at ¶ 7; PX 2; PX 3; PX 4.) Further, even though Lassiter and Harris subjectively evaluated plaintiff's interview, they also explained the grounds for their evaluation with reasonable clarity and specificity. (Martorell Aff. Ex. N at 24-25, 42-43, 51, 76-78.) Thus, defendant has met his burden of articulating a legitimate, nondiscriminatory reason for the failure to promote plaintiff. *See Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir. 2000) ("A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.").

**C.     Pretext**

Plaintiff appears to argue that she was more qualified than the three individuals to which the position was offered, and, therefore, defendant's articulated reasons for the promotion decisions must be pretext for unlawful discrimination. The court disagrees. Plaintiff has not put forth sufficient evidence on which a reasonable jury could find that defendant's articulated reasons for the promotion decisions were pretext for illegal race or gender discrimination.

Further the court notes that Lassiter first chose Dixon, a black female, to fill one of the vacancies. (Martorell Aff. at ¶¶ 7-8 and Ex. E, F; Lassiter Aff. at ¶¶ 8-9.) It was only after Dixon decided not to accept the position that it was given to Earnest, another white male. (Martorell Aff. at ¶ 9 and Ex. G; Lassiter Aff. at ¶ 10.) Additionally, had Earnest or McConatha declined the position, then the position would have then been offered to Pamela Smith, a black female. (Martorell Aff. at ¶ 7 and Ex. E.) These facts undermine plaintiff's argument that defendant's articulated reason was pretextual.

Additionally, plaintiff's argument that defendant's promotion decisions were discriminatory because "it is clear that Defendant has thrown qualifications out the window and

simply made the decision on an ad hoc basis," (Pl.'s Br. at 7), is without merit. Employers are not required to have good cause for their personnel decisions, but may make such decisions for good reasons, bad reasons, erroneous reasons, or for no reason at all, as long as the reason for the decision was not discriminatory. *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1187 (11th Cir. 1984). Further, a court does "not sit as a super-personnel department that reexamines an entity's business decisions." *Alpin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)). Courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Plaintiff has failed to raise a genuine issue of material fact that defendant's articulated reasons are pretext for unlawful motives. Plaintiff has offered nothing more than her own conclusory allegations of discrimination. Such conclusory allegations, without more, are insufficient to raise an inference of pretext or intentional discrimination. *See Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996); *Coutu v. Martin County Bd. of County Comm'rs.*, 47 F.3d 1068, 1074 (11th Cir. 1995); *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988). An "employee's mere suspicion of [race or gender] discrimination, unsupported by personal knowledge of discrimination," is insufficient. *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1026 (11th Cir. 1994). "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuition or rumors; discrimination law would be unmanageable if disgruntled employees could defeat summary judgment by speculating about the defendant's motives." *Lewis-Webb v. Qualico Steel Co.*, 929

F. Supp. 385, 392 (M.D. Ala. 1996) (quoting *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994)). Plaintiff has failed to offer evidence on which a reasonable jury could conclude that defendant's proferred reasons for its promotion decisions were pretext for unlawful discrimination. Thus, defendant is entitled to judgment as a matter of law on plaintiff's claims of race and gender discrimination.

## IV.  CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant William J. Henderson is entitled to judgment as a matter of law. An order granting Defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this  31st  day of January, 2001.


_____
**SHARON LOVELACE BLACKBURN**
United States District Judge